# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 30, 2010

No. 10-50576
Summary Calendar

Lyle W. Cayce
Clerk

JOE H. HERRERA,

Plaintiff–Appellant

v.

COMMISSIONER OF SOCIAL SECURITY, MICHAEL J. ASTRUE,

Defendant–Appellee

Appeal from the United States District Court
for the Western District of Texas
1:09-CV-683

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

Appellant Joe H. Herrera appeals from a final judgment of the district court affirming the decision of the Commissioner of the Social Security Administration denying disability benefits. We find that substantial evidence supported the Commissioner's decision to deny disability benefits, and affirm the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50576

## I. BACKGROUND

Herrera, previously employed as a concrete truck driver, filed for Disability Insurance Benefits on November 30, 2006. Herrera alleged an inability to work beginning August 21, 2006, when he slipped from a ladder on his truck, sustaining a blow to the left side of his chest in the fall.

After denial of his application, Herrera requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 7, 2008. Herrera, represented by counsel, testified that he was unable to work due to constant back pain unresponsive to pain medication or physical therapy, which has restricted his ability to lift and carry more than five to ten pounds, and sit or stand for extended periods of time. He also testified that the pain limited his ability to engage in daily activities such as bathing and dressing without assistance. Evidence in the record shows that Herrera has also been diagnosed with diabetes mellitus, acid reflux, pancreatitis, and an adjustment disorder with anxiety and depression. After the hearing and upon review of the evidence in the record, the ALJ denied Herrera's application for benefits in a decision issued on September 19, 2008. The Appeals Council denied Herrera's request for review of the ALJ's decision on July 30, 2009, rendering it the final decision of the Commissioner of the Social Security Administration.

On September 16, 2009, Herrera filed a complaint seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). In a Report and Recommendation issued on May 10, 2010, a magistrate judge recommended that the Commissioner's decision be affirmed, finding that substantial evidence supported the Commissioner's determination that Herrera was not entitled to disability benefits. Over Herrera's objections, the district court adopted the

2

No. 10-50576

magistrate judge's Report and Recommendation and issued a final judgment affirming the Commissioner's decision on May 25, 2010. Herrera appeals.

## II.  ANALYSIS

"Our review of the Commissioner's decision is limited to two inquiries:  (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  "The Court of Appeals cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision."  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).  "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive."  *Perez,* 415 F.3d at 461 (citing *Richardson*, 402 U.S. at 390).

A person is "disabled" within the meaning of the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant

No. 10-50576

has a severe impairment;[1] (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Perez*, 415 F.3d at 461; 20 C.F.R. § 404.1520(a)(4). In determining whether an impairment prevents a claimant from doing past work or any other work at steps four and five of the analysis, the Commissioner looks to the claimant's residual functional capacity, which is the determination of what the claimant can do despite his mental or physical limitations, based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

First, the ALJ found that Herrera had not engaged in substantial gainful activity since August 21, 2006, his alleged onset date. At step two, the ALJ determined, upon review of the evidence, that Hererra suffered from the severe impairments of back strain, a peripheral neuropathy, depression, diabetes mellitus, and pancreatitis. At step three, the ALJ found that Herrera did not have an impairment or combination of impairments that met or equaled one of the impairments listed in Appendix 1. The ALJ then determined Herrera's residual functional capacity, concluding that Herrera retained the capacity to

---

[1] An impairment is not severe "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citation and internal quotation marks omitted).

No. 10-50576

> lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. The claimant's ability to push/pull would be limited to the weights given. The claimant can frequently, but not constantly, feel with hands and feet; consequently, the claimant must avoid operation of pedal controls. The claimant would also be precluded from more than occasionally stooping, crouching, kneeling and crawling. The claimant would be able to understand, remember, and carry out routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making.

Determining that Herrera was unable to perform his past work as a truck driver, the ALJ nonetheless held that Herrera was not disabled because, considering Herrera's age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that Herrera could perform. Based on the testimony of a vocational expert, the ALJ found that a person with Herrera's limitations could perform a limited range of light work such as housekeeper/cleaner, cafeteria attendant, or small parts assembler.

Herrera contends on appeal that the ALJ's decision is not supported by substantial evidence or the proper legal standard because (1) the ALJ failed to determine the severity of his other mental impairments, specifically his anxiety and learning disability, at step two of the disability analysis; (2) the ALJ failed to assess the evidence relating to all of his mental impairments in determining his residual functional capacity; (3) the ALJ failed to assess the effect of his mental impairments on his ability to perform unskilled work; and (4) the ALJ improperly assessed the effect of plaintiff's pain in determining his residual functional capacity. We address these arguments in turn, and find each to be without merit.

No. 10-50576

First, we reject Herrera's contention that we must remand this case because the ALJ did not explicitly determine the severity of Herrera's anxiety or alleged learning disability,[2] which Herrera contends were identified by Dr. McMains, his evaluating psychologist, and Dr. Boulos, the state agency psychological consultant who conducted a psychiatric review and mental residual functional capacity assessment. Herrera is correct that, at step two of the five step analysis, the adjudicator must determine whether any identified impairments are "severe" or "not severe." *See* 20 C.F.R. § 404.1520(a)(4)(ii), (c). However, this case did not turn on a finding that Herrera's impairments were not severe at step two; rather, the ALJ concluded that Herrera was not disabled because, despite his severe impairments, he retained the residual functional capacity to do other work. Therefore, the ALJ's failure to assess the severity of Herrera's anxiety or learning impairments at step two is not a basis for remand. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (ALJ's failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis); *see also Mays v. Bowen*, 837 F.2d 1362, 1365 (5th Cir. 1988) (per curiam) ("[I]f the ALJ proceeds past the impairment step in the

---

[2] On appeal, the Commissioner on appeal contends that the ALJ did not err in failing to determine the severity of Herrera's alleged learning disability because Herrera had not put forth any objective medical evidence to establish the existence of such an impairment, much less that it was severe. The magistrate judge agreed with the Commissioner that "the only evidence in the record of [Herrera's] learning impairments is his statement that he attended special education classes beginning in sixth grade." Herrera apparently argues that findings by Dr. McMains in his mental status examination establish the existence of a learning disability. We need not decide the issue because, as explained below, assuming that the evidence sufficed to establish a learning disability, the ALJ's failure to determine whether it was severe at step two was essentially harmless error. Moreover, to the extent that Dr. McMains found that Herrera had moderate impairments in certain areas of mental functioning, the ALJ incorporated these findings into his assessment of Herrera's residual functional capacity.

No. 10-50576

sequential evaluation process the court must infer that a severe impairment was found.").

Moreover, we also reject Herrera's contention that these impairments meet the criteria of any listed impairment. At step three of the analysis, "the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity." *Loza*, 219 F.3d at 390. "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step . . . ." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (citing 20 C.F.R. § 404.1520(e)). Contrary to Herrera's characterization of the record, neither Dr. McMains nor Dr. Boulos found that any of Herrera's mental impairments meet or equal the criteria for a listed impairment. Dr. McMains concluded that Herrera has "average intelligence" and social functioning within normal limits, and only moderate impairments in memory, concentration, abstract thinking, judgment and insight. Dr. Boulos expressly found that Herrera's impairments "do[] not precisely satisfy the diagnostic criteria" of any listed impairment. Accordingly, we find no reversible error on this basis.

Second, contrary to Herrera's assertions on appeal, we find that the ALJ properly considered his mental impairments in determining Herrera's residual functional capacity to do past work and other work. In his opinion, the ALJ specifically referenced findings from Herrera's mental status evaluation, Herrera's global assessment of functioning ("GAF") score,[3] as well as Herrera's

---

[3] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd v. Apfel*, 239 F.3d 698, 700 n.2 (5th Cir. 2001) (quoting AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND

No. 10-50576

treatment records and hearing testimony.  Based on the evidence as a whole, the ALJ concluded that Herrera has mild restrictions in the activities of daily living, mild difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace.  He concluded that "[t]his determination is consistent with the claimant's demonstrated abilities on mental status evaluation, which included moderately impaired concentration and social functioning within normal limits . . . ."  The ALJ incorporated these limitations into his determination of Herrera's residual functional capacity, finding that Herrera "would be able to understand, remember, and carry out routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making."  We find that the ALJ considered the relevant evidence regarding Herrera's mental impairments, and that substantial evidence supports his conclusions.

Third, Herrera contends that the evidence does not support a finding that he is capable of performing unskilled work, and that the ALJ failed to properly assess his mental impairments in determining otherwise.  Herrera correctly notes that "[t]he decisionmaker must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work. The decision requires careful consideration of the assessment of [residual functional capacity]."  SSR 85-15 (1985).  Social Security Ruling 85-15, upon which Herrera relies, states that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities . . . to understand, carry out, and remember simple instructions; to respond appropriately to supervision,

---

STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV)).

No. 10-50576

coworkers, and usual work situations; and to deal with changes in a routine work setting." *See also* 20 C.F.R. § 404.1521(B).

The ALJ in this case considered Herrera's mental impairments, and concluded that Herrera retained the capacity "to understand, remember, and carry out routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making." This finding is consistent with the ALJ's holding that Herrera retained the residual functional capacity to perform unskilled work, and is supported by substantial evidence. For instance, Dr. Boulos concluded that Herrera retained the functional capacity to "understand, remember, and carry out detailed and complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in the routine work setting," finding Herrera to be only "moderately limited" in these areas. Furthermore, Dr. Boulos also found that Herrera was "not significantly limited" in his ability to get along with coworkers or peers, and Dr. McMains found social functioning within normal limits.

Finally, Herrera contends that the ALJ failed to consider the effect of his physical impairments and pain in his assessment of Herrera's residual functional capacity to work a 40 hour work week, as required by 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p. Pursuant to § 404.1529(c)(1), the adjudicator must find whether the objective medical evidence shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's complained-of symptoms, such as pain. If so, the adjudicator must then evaluate the intensity and persistence of the symptoms in order to determine how the symptoms limit the claimant's capacity

No. 10-50576

for work. *Id*. If the claimant's symptoms are not substantiated by objective medical evidence, "the adjudicator must consider all of the evidence in the case record, including any statements by the individual . . . concerning the individual's symptoms" and then "make a finding on the credibility of the individual's statements about symptoms and their functional effects." SSR 96-7p (July 3, 1996). "The ALJ must consider subjective evidence of pain, . . . but it is within his discretion to determine the pain's disabling nature." *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (per curiam) (internal citations omitted). Although an ALJ "is bound . . . to explain his reasons for rejecting a claimant's complaints of pain," he is not required to "follow formalistic rules in his articulation." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

In accordance with § 404.1529, the ALJ first determined that Herrera's medically-determinable impairments could reasonably be expected to produce the symptoms that Herrera alleged. However, the ALJ concluded that Herrera's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." Based on the evidence in the record, the ALJ was "not convinced the claimant has been precluded from meeting the demands of competitive work since August 21, 2006," and that " the degree of pain alleged exceeds objective medical findings." He found that "the evidence . . . does not reflect symptomatology that would cause more than 1 to 2 absences a month," and therefore would not preclude competitive work.

Contrary to Herrera's assertions, the ALJ came to this conclusion after thorough consideration and discussion of the relevant medical evidence on record regarding Herrera's physical impairments. This evidence included reports from

10

No. 10-50576

his treating physician following the August 21, 2006 accident and from a number of consultative physical examinations, and Herrera's and his wife's accounts of his pain and the effect of his symptoms on his daily activities. The ALJ found that Herrera's physical impairments limited his abilities, but concluded that the evidence "suggests at most symptomatology that would preclude lifting/carrying in excess of 20 pounds occasionally and 10 pounds frequently and more than occasionally stooping, crouching, kneeling, and crawling." The ALJ also found that Herrera's medical conditions would "preclude the claimant from constantly feeling with his hands and feet and operating foot controls." The ALJ incorporated these limitations into his residual functional capacity determination. It appears that the ALJ fully considered the evidence in the record in making his determination, and on review of the record we find that substantial evidence supports the ALJ's conclusions.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.